Good morning, Council. The next case we have for argument is United States v. Rodriguez. It is DACA 20-2173. Mr. Walls, we're ready to hear you when you're ready to begin. Well, thank you very much, Your Honor, and good morning to everyone. It's always a pleasure to argue at the 10th Circuit. I greatly appreciated doing that over the years. For both younger counsel, although one may remember being here long enough, this strikes me as shades of Mr. Small and Mr. Little from years ago in the Amtrak cases. I knew Kevin Small very well, and I actually represented him on occasion, and never take no for an answer was his motto. But in any event, we have put in a lot of effort and time on a encounter that took 3 minutes and 44 seconds between Mr. Perry, or Agent Perry, who was trained by Kevin Small, and Mr. Rodolfo Rodriguez. As the Court knows, we had a 5-hour suppression hearing, multiple briefings. The evidence was well-developed, and yet we're here seeking yet perhaps a final determination on the propriety of the investigation, the encounter, and the search and seizure. It's not particularly a complex case that brings us here. Agent Perry, on February 1, 2018, was conducting consensual searches and encounters on Amtrak. Rodolfo Rodriguez was a passenger in a remote area of the train. There were not any number of passengers there, maybe a couple towards the back. He was asleep, or he claims he was asleep. Agent Perry approached him, asked him if he could talk to him, identified himself as a police officer, and then we get into our first issue where Mr. Rodriguez says, No, I'm asleep. Here's my ticket. Now, that became an issue because Agent Perry did not recall or hear Mr. Rodriguez, or claims he didn't hear, say, No, or I'm asleep. The original information that Agent Perry stated that he heard was, Here's my ticket. And that, facially, if that's all Mr. Rodriguez said and gave him his ticket, that would still be considered, I would believe, a consensual encounter at that point. Once we developed the evidence and got into the suppression hearing and introduced the tapes and had them analyze the tape, I'm sorry, there's only one tape recording, the digital recording, finally, Agent Perry conceded to Judge Baldock that he could hear the words, I'm asleep. He never would concede that he heard the word, No, even though there's a, I can hear it, even at my age, but Judge Johnson described it as a low-grown, but he also addressed that even if he said, No, that would still be okay. It was still consensual at that time. So that's the first dispute we got into. If he says, No, I'm asleep, here's my ticket, should the encounter have ended at that time. I'm familiar with the Manuel cases and other cases the government has cited in their answer brief. I believe they're all distinguishable for reasons we put in our reply brief, but assuming that we go forward and the court finds that first encounter consensual where Mr. Rodriguez did not convey or Mr. Perry did not understand or hear that Mr. Rodriguez was withdrawing from any dialogue or discussion. And assuming that this is, the court wants to go down to Manuel type of cases, that you can still continue asking questions of some sort, but everyone concedes, including Judge Johnson, in a very well-written 25-page opinion, as does the government, that there's still no probable cause to conduct an investigatory pat-down search at that time. So, this dialogue supposedly is still continuing between Mr. Rodriguez and Special Agent Perry of the DEA, and a question was raised at some point, was he actually a DEA agent? We never did see a certification, it was denied by the court. Do we do anything with the voluntary action and statement, here's my ticket, and then the handing over of the ticket? Does that get us anywhere? Well, sure. That does. That would be perhaps considered that Mr. Rodriguez was engaging in a consensual type of interchange with Special Agent Perry. So, again, when you look at it in the totality of the circumstances, as the case law tells us to, we'd have to look to see, did, in fact, Mr. Rodriguez say, no, I'm asleep, and here's my ticket? Are those two inconsistent internally? Perhaps they are. So, we can, I think that Mr. Rodriguez clearly made himself, his intentions known that he did not want to engage with Special Agent Perry, but assuming Judge Briscoe that, here's my ticket, allows it to go further. Let's say no harm, no foul at this point. There's been no drugs uncovered, no illegal activity. There's no articulation of either reasonable suspicion or probable cause made by Special Agent Perry at this point. Now we get into a very important analysis in this case, and that is the development of probable cause. And that's why Judge Phillips and Judge Baldock also, it's important that we look at these credibility issues of Agent Perry, because even the government concedes, Agent Perry conceded at the suppression hearing, he did not have probable cause to install two small vials that he believed had marijuana, or residue of marijuana. One was a gummy, and one was a residue. Now, kind of an interesting scenario there, Mr. Rodriguez, in Mr. Perry's presence, at least as the gummy bear, consumed it in front of Mr. Agent Perry, who kind of chuckled a little bit. I don't know if that was the wisest decision at the time, but certainly it was interesting, but no crime was charged there. There never was any kind of analysis as to whether that residue was marijuana or not. We still don't know that to this day. It's a dark, opaque vial. It was entered into evidence. You have the record up there that you can see what the vial looks like. But in any event, now we get into the credibility of Special Agent Perry, in that how did he come upon the vials to establish probable cause, then to do an investigatory seizure and pat down? We have three versions, all under oath, by Agent Perry, that are inconsistent with one another, three different times. The first one is the grand jury, where he's testified that Mr. Rodriguez shook out his backpack, and the vials came out, and he saw the vials then. There's two other versions that came out during the suppression hearing. One is that Agent Perry seized, essentially, the white laundry bag. It's a plastic bag. It's white, opaque. And Agent Perry retrieved the vials from the bag. The third version is that Rodolfo Rodriguez, and these are all coming from Agent Perry, opened the bag and produced the vials. Counsel, doesn't the trial court in this case particularly find that the agent's testimony is credible? Well, yes, he did. Yes, and I understand that we have to show clear error for credibility. Clearly erroneous, I'm sorry, clearly erroneous. It's a de novo review as to the law, but clearly erroneous as to credibility and findings. And that's part of our argument, Judge Baldock, is that Judge Johnson's opinion was clearly erroneous in that regard, because the court does not square in its opinion how we can have these three inconsistent stories that led to probable cause, because that's the linchpin at this point. That's the linchpin. Don't we have also, though, an audio tape at the beginning of when there's a question on the train and things like that? We have that at the beginning, Judge. Doesn't that play into our looking at what's going on in front of us? In part, because I think the audio at the beginning actually favors Mr. Rodriguez, because Agent Perry ultimately conceded he did say, or he heard, I'm asleep. He still never conceded the word no, but whenever we get into the vials and let me see that bag or, you know, what are you doing with your backpack, that type of thing. It's absolutely almost unhelpful because we can't really tell specifically what they're referencing. We hear noise and lack of noise, but we developed that in our brief. But I'm looking again at what Judge Johnson said about that bag. I mean, a specific indication leads to what he was believing and how he arrived at credibility and things like that. That bag, I mean, you touched on that already. Well, there were several bags. That's the problem. He had his backpack, which was referred to, I believe, as a bag. Is that the one that was dumped out? Yes. You just dumped it. Okay. That's correct. Nobody seems to be in any argument about that, including Agent Perry. What other bag then? Because if it's not that, it's not that bag. Under the backpack was a white, opaque laundry bag, which was not see-through. And that also addresses whether it was in plain view or inevitable discovery, it wasn't. And under that bag, at least according to Mr. Rodriguez's testimony, were the two vials. So you're saying that the vials were not in any bag? Well, that was Mr. Rodriguez's testimony, that they were not in the backpack or the white, opaque bag, but rather they were under the bags, under the backpack and under the white laundry bag. And so then we get into this issue as to how did Agent Perry actually come across the vials, Judge Briscoe, and did he violate Mr. Rodriguez's Fourth Amendment rights in getting to a position where he got the vials? And frankly, we can't tell. We can't tell from his testimony. He's given three different versions. I don't know. I don't know that Agent Perry knows how he came across those vials. But the fact of the matter is the government has the burden to show that he obtained those vials in a constitutionally permissible manner to establish probable cause for the remainder of the search where he subsequently found the illegal narcotics. And I'd like to reserve my remaining two minutes, 54 seconds. Thank you. Ms. Walters. You're on, you're on mute. I apologize. Good morning again, Your Honors. May it please the Court, Tiffany Walters for the United States. Agent Perry's encounter with Rodriguez was consensual until his arrest. Nothing about Agent Perry's conduct would have conveyed to the reasonable person that he was not free to decline his request or terminate the encounter. Starting first with the dispute about whether or not the defendant said, no, I'm asleep. Before he said, here's my ticket and hands the ticket to Agent Perry, the district court found that he that it heard more of a low groan as opposed to the word no. And this court is reviewing that under the clearly erroneous standard. And even if reasonable minds could debate as to whether or not they can or can't hear the word no and enhanced recording, that's not sufficient to survive the clear, clearly erroneous standard. But moving on from that statement, Rodriguez wants to stop, stop the clock right after he allegedly says, no, I'm asleep and not consider what happens afterwards. But immediately after that, he says, here's my ticket and hands it to Agent Perry. At that point, Agent Perry does what any reasonable person would expect him to do. I mean, Agent Perry is not going to throw his hands up. He's going to reach out and take the ticket, take a look at it and ask appropriate questions. And during the course of the encounter, I'm sorry, Rodriguez never says, no, I need to clarify. Even though I handed you my ticket, I meant something else or I don't want to engage further. That never happens. Agent Perry proceeds and a polite and calm process to ask him for his ID and to continue the encounter and going to the train. I would disagree with Mr. Ross description of it as remote. He's in a train car. And while there might not be people right next to him, there's people in the back of the train car. Presumably, had he raised his voice, he could have made himself heard. Agent Perry is the only officer on the scene. I'm sorry, not on the scene. There's another officer at the back of the train, but it's the only officer that Rodriguez is aware of. Agent Perry is in plain clothes. He leaves his weapon concealed. He doesn't touch or restrain Rodriguez. He leaves enough space in the aisle so that Rodriguez could pass. Agent Perry phrases his request to talk as a question. Agent Perry's continuation after Rodriguez says, I'm asleep, doesn't wouldn't convey to a reasonable person that he would that he was not free to terminate the counter. Because Rodriguez has communicated to Agent Perry by handing it over that he is not intending to terminate the encounter. He's continuing the encounter. In looking at whether or not. Agent Perry heard Rodriguez say, no, I'm asleep. The court considered it in the context of credibility, and that's certainly relevant to Agent Perry's credibility. And the court looked at the recording and said this recording had to be enhanced. It was difficult to hear. That corroborates Agent Perry's claim that he didn't hear it. His report, which is written shortly thereafter, just includes the here's my ticket, which substantiates that's what he heard. And then Rodriguez testified that in prior encounters, Agent Perry had respected his wishes when he said no. And also, the district court did not make this credibility finding at the back. The court was weighing the testimony of Agent Perry with a testimony of Rodriguez. And the court said that it favored Agent Perry's testimony because of numerous plausibilities in Rodriguez's testimony. Rodriguez testified that Agent Perry harassed him. He claimed that he told Agent Perry, I know who you are. And no, you can't search me. No, stay away from me. No, you can't search me. No, I can't believe you're waking me up in the middle of the dead sleep and asking me all these questions. He claims he said no, a total of a half a dozen times. And that's simply not reflected on the recording. So the district court did not clearly err in crediting Agent Perry's testimony, which was reflected in the recording and declining to credit. Rodriguez's unsubstantiated claims. Moving on, how does the how does Rodriguez's testimony at this pressing hearing about his previous encounter with this agent weigh into things? The district court considered that in the context of credibility, and he said to some degree, and the district court put little emphasis on this. It corroborates Agent Perry's testimony that when I when I hear no, I respect that I stop. And I think that's probably the extent of it, because this is an objective, reasonable person standard. We're not looking at what Rodriguez's personal experiences with Agent Perry were. And Agent Perry didn't testify that he had any recollection of any of these experiences. So I don't think that they really weigh very heavily at all in the ultimate question of whether or not a reasonable person would feel free to terminate the encounter. And regardless of whether Agent Perry heard the statement, no, I'm asleep or didn't. The question is whether or not his conduct conveyed to a reasonable person that he would be free to not be free to terminate the encounter. And all of us have experiences in daily life where we say something and someone doesn't hear us. And so the question of whether or not Agent Perry heard him or not is relevant to whether a reasonable person would think, oh, this this officer is ignoring my wishes to terminate the encounter or or perhaps in a loud train with a lot of background noise. He simply didn't hear a mumbled statement. And and the fact that he said, here's my ticket and hands it over has conveyed that he's voluntarily consented to continuation of the encounter. So what do we do with the inconsistencies of the agent's testimony that defense counsel has pointed out? We would argue that the court should not consider those because they were waived. They were not identified or not argued to the district court because we're in the context of a suppression motion. A defendant would need to show good cause under Rule 12 to pursue those arguments. And the plea agreement waives and contains an appellate waiver that waives any arguments that limits the appeal to any grounds argued below in suppression motions. And so for those reasons, the court shouldn't consider it. But even if the court chose to first, the reason the district court doesn't weigh in on these is because these these arguments haven't been raised. And so it makes sense. The district court doesn't doesn't analyze these issues. We have one inconsistency in internally in the testimony where Agent Perry one at one point says, I opened the plastic, the opaque plastic bag. And then at another point, the testimony testifies that Rodriguez opened it at the point of opening. We've gotten past the point where Rodriguez has consented to the second back. So who opened it isn't a particularly legally, legally operative fact. And because it was never raised at the hearing, we don't know if he simply misspoke when he said that or if there's something more. We just don't know. And that's why these arguments need to be raised at the time in order to explore them with the witness. So we have that inconsistency. Second, inconsistency that that Rodriguez identifies is with the grand jury testimony. Now, at the suppression hearing, defense counsel, Mr. Walls, I believe, did cross examine Agent Perry on the grand jury testimony with his grand jury transcript, but didn't go into this alleged inconsistency. And I think there was there was argument wasn't there that there are too many contradictions that make the credibility of Agent Perry viable. Wasn't that wasn't that part of the defense counsel's argument. As to the grand jury transcript. No, generally, the motion to suppress. Well, the motion to suppress focused on his credibility in terms of this court's decision in Ron Hill and in other cases where the district court has expressed concern regarding credibility. And that's the argument that was raised was that the district court, even before Agent Perry took a stand to discredit his testimony based on other cases. And Judge Johnson does consider that argument and says and considers this court's decision in Ron Hill, which did remand, but didn't find perjury in that case or misrepresentation. It remanded for further proceedings. And then Judge Johnson also noted that there were a couple of Judge Vasquez cases where there were some concerns regarding Agent Perry's credibility that Judge Vasquez subsequently credited him in a case. And the court says it doesn't see a reason to apply the credibility findings in those cases to this case, but it should be considered independently. And here, this court, the district court is looking at not just Agent Perry's testimony in a vacuum, but comparing it with the completely incredible testimony of Rodriguez regarding what happened, which is entirely inconsistent with the recording. And says that between these two, Agent Perry's, I favor Agent Perry's testimony. This is a more credible testimony. So the district court does address that. The inconsistency that was waived with the grand jury testimony is in reference to a 12-line paragraph where he describes how the vials are found in its, Agent Perry testifies, I believe, that he shook it and then the vials fell out. But omits all the details and the steps where the white bag fell out and then subsequently they searched the white bag and then the white bag contains the vials. So, again, this wasn't addressed by the district court, but I think there's reasonable grounds to believe that that very brief grand jury testimony, it's reasonable that when you have a full day suppression hearing, you're going to get a more detailed step-by-step description of what happened. But Agent Perry was never confronted with any of this inconsistency or provided any opportunity to explain it. So I think those three I newly identified. And then the third, I think, inconsistency that Rodriguez has raised on appeal that wasn't raised below is that Agent Perry's testimony is just inherently implausible because, and perhaps we should step back at that phrase and walk through what happens when we get to the search of the bags. So, Agent Perry asked permission to search the backpack. In response, Rodriguez dumps the backpack and shakes it, and you can hear in the recording the sounds of things rustling and falling out for about 10 seconds, and then he asked for permission to search this bag here. Agent Perry testifies that he's referring to the white plastic laundry bag. It's a white plastic bag with laundry written on it, like the kind you get in a hotel that fell out. And Rodriguez testifies that he knew someone was going to come harass him on the train, and so he dumped all of his stuff out on the aisle seat next to him, covered it with a plastic bag, and then put the backpack on top. And so, Rodriguez argues that it's implausible that he could have grabbed the vials out of this plastic bag where he grabbed them and hid them behind his back and took the gummy, because Agent Perry would have been holding the bag and it wouldn't be possible for him to reach in without standing up. But the record just doesn't indicate one way or the other whether or not when Agent Perry searches that plastic bag, if he's holding it, or if it's just sitting on the seat and he's opening it and looking inside. So, I think the record doesn't support any grounds to find Agent Perry's testimony implausible. It simply just doesn't answer that issue. Okay, the seat where the bags and the vials are found, is that seat on the other side of the defendant? That is the agent standing in the aisle, the defendant is sitting in a seat next to the aisle, and the bag is in the seat next to the defendant. Is that how it is? I believe the defendant is in a window seat. So, the seat where all the bags, etc. are is right in front of the agent. Correct, the agent, it's in the very first row, it's sort of like a bulkhead on airplanes, there's a little more space and he's sort of, the other side of the aisle is empty, so he's standing like on the edge of the aisle or in that bulkhead area across the aisle. If there are no other questions, I'll just end by stating that because the encounter and searches were consensual, voluntary, there was no Fourth Amendment violation here, and the United States therefore requests that this court confirm. Thank you. Mr. Walls, you are muted at the moment. There you go. Thank you. Yes, I find it very incredulous that the government somehow contends that issues that were directly litigated in the suppression hearing and ruled upon by Judge Johnson have been waived when the conditional plea was that we could appeal from the suppression hearing. These issues were thoroughly vetted. There was testimony from Agent Perry, there was a recording, there was testimony from Mr. Rodriguez, and these issues relating to the vials, how they were discovered, who did what, to what bag, that's all part of the district court record, and it's properly before this court. And it is a major issue as to if we could get by the first part again, that a reasonable person would have believed that he could just walk away and get on to this next segment where we get into this interchange between Agent Perry and Mr. Rodriguez relating to, can you search this bag or that bag or the backpack, or where the vials were located. That is a heart of whether or not probable cause was generated at that point as to how Perry got those vials. I think all of us would agree, based on the case law, even a residue of marijuana still, federal law, would give probable cause for a pat-down search. So, we have to look at how did those vials come about being discovered. If they were discovered in an unconstitutional manner, which we believe they were, then Mr. Rodriguez's case would be remanded and the suppression granted. Counsel, do you agree with the government's view as to the location of the defendant, that is, what seat he was in, where the bag was located, and where the agent was standing? No, I don't. I don't. I believe... I didn't think from your briefing you did, because you were talking about the agent reaching across the defendant to get to the bag. That's right. That's right. And that's the testimony, and that indicates to us that Mr. Rodriguez was in an aisle seat. Agent Perry was, we believe, close enough in proximity, actually blocking his egress, and Seth Chavez was coming in from the back of the train car, blocking the other exit. And so he was confined, and a reasonable person would have believed Judge Briscoe that he or she was not free to leave at that point, and was submitting to the directives of Agent Perry, who quickly handcuffed, by the way, Mr. Rodriguez in short order. So I think that pretty well goes the intent. Lastly, Rangel and all those cases show that Perry has a history of problems with tape recorders and putting things on reports and in court testimony, and that's why this conviction should be sent back and the suppression granted as a matter of law. Thank you. Thank you, Counsel, for your helpful arguments. And the case submitted, Counsel, are excused. Thank you. Thank you.